McPARLAN *v.* GRAND TRUNK WESTERN RAILROAD CO.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE OF HOST MOTORIST NOT IMPUTABLE TO MINOR GUEST.
    In action against a railroad company by a minor who was a guest passenger of a motorist whose car collided with defendant's train, the principal question is whether defendant was guilty of negligence since contributory negligence of motorist cannot be imputed to plaintiff.

2. RAILROADS—SAFEGUARDS AT CROSSINGS—STATUTES—COMMON LAW.
    Maintenance by railroad company of safeguards and signals as required by statute where highway is crossed does not relieve company of common-law duty to highway users to maintain such other protection as ordinary care and prudence demand, the statutory safeguards not being exclusive, it being the duty of railroad to maintain others under special conditions (2 Comp. Laws 1929, § 11402 *et seq.,* as amended by Act No. 336, Pub. Acts 1931).

3. SAME—OCCUPATION OF CROSSING BY TRAIN—EVIDENCE.

When a train actually occupies a highway crossing, it is a notice and warning of its own presence and failure to operate statutory signals or devices may not be negligence nor are special means of protection against approaching trains necessary to warn highway users of trains standing on, or passing over, crossing (2 Comp. Laws 1929, § 11402 *et seq.*, as amended by Act No. 336, Pub. Acts 1931).

4. SAME—TRAIN ON CROSSING—DUE CARE—WARNINGS.

Due care on part of railroad company in maintenance of signals and warning devices as to presence of trains standing on, or passing over, crossing is determined by whether an ordinarily prudent person would have deemed it necessary, in the exercise of ordinary care, to maintain additional warning devices in order to prevent users of highway, proceeding at a lawful speed and with ordinary care, from running into such train.

5. SAME—AUTOMOBILES—GRADE CROSSING—WARNING.

Plaintiff, a minor guest passenger in an automobile, had a right to such safeguards and warning to her driver as common prudence required defendant railroad company to provide for all drivers at its crossing.

6. SAME—OTHER ACCIDENTS AT SAME CROSSING—WARNING.

Occurrence of other collisions between automobiles and trains at a grade crossing and defendant railroad company's knowledge thereof did not of itself raise duty in company to maintain additional safeguards.

7. SAME—BURDEN OF PROOF OF NECESSITY FOR ADDITIONAL CROSSING SAFEGUARDS.

Since there is no common-law duty on part of a railroad company to provide greater warning to negligent or unlawful drivers than to careful ones and after maintenance of statutory safeguards company, presumably, need keep no others, burden of proof of special conditions requiring special protection to travelers is on plaintiff in her action as guest passenger of motorist whose car collided with defendant's train occupying a crossing (2 Comp. Laws 1929, § 11402 *et seq.*, as amended by Act No. 336, Pub. Acts 1931).

8. SAME—QUESTION FOR JURY—EVIDENCE.

On issue of fact as to whether or not railroad company need maintain additional warnings as to presence of train on a highway crossing in action against it by a minor, a guest pas-

senger of motorist whose car collided with train on crossing, plaintiff's burden of proof *held*, not sustained by evidence that other collisions had occurred at same crossing where she did not show that either her own or the other drivers were proceeding at a lawful and careful rate of speed, either as fixed by statute or as demanded by weather and street conditions (1 Comp. Laws 1929, § 4697).

9. SAME — AUTOMOBILES — HIGHWAY CROSSING ACCIDENTS — PRIMA FACIE NEGLIGENCE.
     *Prima facie*, motorists, whose cars collide with trains lawfully crossing a highway, are guilty of negligence.

10. SAME—LIGHT TRAPS—SPECIAL WARNING AT CROSSING—EVIDENCE.
     Claim that light at street intersection 65 feet from railroad crossing and 24 feet above pavement created light trap requiring railroad company which operated trains with flat cars over crossing to maintain special warning *held*, without support in evidence in action by minor guest passenger in colliding car, especially where such evidence as was presented was confined to unusual weather and street conditions not shown to have been such as to be reasonably anticipated by defendant railroad company.

11. SAME—AUTOMOBILES—CROSSING ACCIDENT—SPECIAL WARNING—EVIDENCE.
     In action by minor guest passenger of motorist whose car collided with train occupying a highway crossing at 1 o'clock on winter morning, plaintiff *held*, to have failed to meet testimony of observations and photographs indicating sufficient view to a careful driver to obviate necessity for special protective devices, it being admitted all warning devices required by statute were present (2 Comp. Laws 1929, § 11402 *et seq.*, as amended by Act No. 336, Pub. Acts 1931).

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 9, 1935. (Docket No. 22, Calendar No. 38,529.) Decided December 10, 1935.

Case by Elaine Marie McParlan, by Catherine Kelley, her next friend, against Grand Trunk Western Railroad Company for personal injuries sus-

tained in a railroad crossing accident. Verdict and judgment for plaintiff. Defendant appeals. Reversed, without a new trial.

*Sharkoff & Wierengo,* for plaintiff.

*H. V. Spike, W. W. MacPherson, E. C. Farmer* and *Lou L. Landman,* for defendant.

FEAD, J. Plaintiff had verdict and judgment for personal injuries. As plaintiff is a minor, to whom the contributory negligence of her driver cannot be imputed, the principal question is whether defendant was guilty of negligence.

About 1 o'clock in the morning of February 19, 1934, Joseph Loseth drove his automobile into a freight train crossing Lake Shore Drive in the city of Muskegon and plaintiff, 18 years of age, his passenger, was injured.

The railway had been little used for many years until about six months before the accident, when traffic became heavy, especially at night, because defendant had installed a car ferry service at Muskegon. To avoid running the heavy locomotive on the ferryboat, four flat cars were run ahead of the engine. The crossing was unobstructed, with a clear view to the right and left. A railroad crossing sign is located about 30 feet east of the track, is 8 feet high but is said to be too high to be seen in the light range of car dimmers. Sixty-five feet east of the track, at the intersection of McCracken avenue, is a city street light 24 feet above the pavement. The train was backing south at 4 to 6 miles per hour, with headlight on the rear of the tender, with bell ringing and the whistle had been blown. The tender, locomotive and flat cars had passed over Lake Shore Drive, which crosses the track at right angles.

Plaintiff claims the Loseth car struck a box car next following the flat cars. Defendant claims it struck the ninth car.

Plaintiff, Loseth and another man were in the front seat of the automobile and two men occupied the rumble seat. They were going home from a party. The night was clear, cold and dark. The street was icy and slippery. The windshield of the car was frosted so that none of the passengers could see ahead. With a salt bag the driver kept a clear space in front of himself on the windshield.

Loseth and plaintiff were familiar with the crossing and knew trains were run at night. They approached from the east on Lake Shore Drive at a speed said by Loseth to have been 25 miles per hour and by plaintiff between 20 and 30 miles per hour. They knew when they entered Lake Shore Drive, but say they did not know their exact location thereafter. Loseth was driving with his headlights dimmed and could see 50 to 75 feet ahead. However, he stated that his car lights were overpowered by the street lights and when he came to the McCracken light there was a space in which he could not see beyond and he did not see the train until he was about 25 feet from it; he saw a dark object ahead of him, he tried to stop, swung to the right but his car skidded on the icy pavement and crashed against the train.

Over objection, plaintiff introduced testimony of two drivers who had had similar accidents at the crossing, of which defendant had had notice. One stated that on December 26, 1933, about 1:30 of a cold, dark night and on a slippery road, he approached the crossing from the east, his eyes were partly blinded after coming out from under the McCracken street light, he could not see as well as in

the lighted place, and did not see the train, which was not moving, until he was 10 feet from it. The other said that his accident occurred at 3 o'clock of a cold morning in February, 1934; his windshield was frosted; the train was moving; the street was slippery, and he first saw the train when about 5 feet from it. Neither testified to his rate of speed or the condition of his headlights or the care of his observations ahead.

Plaintiff presented no testimony of observations at or about the McCracken street light with reference to the distance an ordinarily careful person would see ahead. Defendant produced photographs and witnesses indicating that at the street light one has a clear vision of 150 feet, sufficient to see a person walking. It is not disputed that the crossing had all the protective devices and the trainmen gave all the signals required by statute or order of officers thereunder.*

The theory of defendant's negligence, as claimed by plaintiff and submitted to the jury, is summed up in the following instruction:

"So I charge you that if you find because of the special circumstances existing in this case, such as the fact that this crossing was used extensively by the traveling public and necessarily frequently presented a point of danger, and that owing to the nearby situation of lights and the manner in which the train was operated by the use of dummy flat cars following the engine, or other natural obstructions which afforded less than ordinary opportunity of observation of a train approaching or crossing such grade crossing and other like circumstances of a special nature, it was reasonable that the railroad company should provide special safeguards to per-

---

* See 2 Comp. Laws 1929, § 11402 *et seq.*, as amended by Act No. 336, Pub. Acts 1931.—REPORTER.

sons using the crossing in a prudent and cautious manner, and the law authorizes you to infer negligence on its part for any failure to adopt such safeguards as would have given warning, although we have a statute in Michigan which undertakes by its provisions to secure such safeguards in the way the statute points out.''

Other instructions made it clear that the duty of defendant to maintain safeguards was one of ordinary caution and care.

The fact that defendant maintained the safeguards and signals required by statute, or order thereunder, did not relieve it of the common-law duty to maintain such other protection to travelers on the highway as ordinary care and prudence demanded. The statutory safeguards are not exclusive but, under special conditions, it would be the duty of the railroad company to maintain others. *Staal* v. *Railroad Co.*, 57 Mich. 239; *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Freeman* v. *Railway Co.*, 74 Mich. 86 (3 L. R. A. 594); *Barnum* v. *Railway Co.*, 148 Mich. 370. Were the required special conditions shown?

Usually railroad signals and devices are to warn travelers on the highways of the approach of trains. When a train actually occupies the crossing, it is a notice and warning of its own presence, and failure to operate the statutory signals or devices may not be negligence. Even though circumstances might require special means of protection against approaching trains, it does not follow that they are necessary to warn travelers of trains standing on or passing over the crossing. The issue is specific, not general. It is confined to whether an ordinarily prudent person would have deemed it necessary, in the exercise of ordinary care, to maintain additional warning devices in order to prevent users of the

highway, proceeding at a lawful rate of speed and with ordinary care, from running into a train on the crossing. *St. Louis-San Francisco R. Co.* v. *Guthrie,* 216 Ala. 613 (114 South. 215, 56 A. L. R. 1110); *Philadelphia & R. R. Co.* v. *Dillon,* 31 Del. 247 (114 Atl. 62, 15 A. L. R. 894); *Gilman* v. *Railway Co.,* 93 Vt. 340 (107 Atl. 122, 16 A. L. R. 1102); *Yardley* v. *Railroad Co.,* 103 Vt. 182 (153 Atl. 195); *Trask* v. *Railroad,* 219 Mass. 410 (106 N. E. 1022); *Gulf, M. & N. R. Co.* v. *Holifield,* 152 Miss. 674 (120 South. 750).

Loseth's contributory negligence did not excuse negligence in defendant. Plaintiff had a right to such safeguards and warning to her driver as common prudence required defendant to provide for all drivers. On the other hand, the fact that other collisions had occurred with trains at the same crossing and defendant knew of them did not, of itself, raise a duty in defendant to maintain additional safeguards.

There is no common-law duty to provide greater warning to negligent or unlawful drivers than to careful ones. Presumably a railroad company, maintaining the statutory safeguards, ·need keep no others. The burden of proof of special conditions requiring special protection to travelers is on the plaintiff. Often the question is for the jury. 60 A. L. R. 1106, note. But, like all other matters in litigation, there must be sufficient supporting evidence to render the issue one of fact. The difficulty with plaintiff's case is in the absence of proof of special conditions raising the special duty. It does not appear that Loseth and the'other drivers who ran into trains were proceeding at a lawful and careful rate of speed, either as fixed by statute* or as demanded by the weather and street conditions. *Prima facie,*

---

* See 1 Comp. Laws 1929, § 4697.—REPORTER.

the drivers were guilty of negligence in running into trains lawfully upon the crossing. The claim that conditions created a light trap in which drivers were blinded and could not see the train, especially the flat cars with low visibility, until too late to avoid a collision and, therefore, the duty to maintain special warning was cast on defendant, has no support in evidence of observations by persons shown to have been careful. The drivers did not testify to distances at which a train could be seen by careful persons but merely to distances at which they had seen the trains. The diversity of distances to which they testified forbids the inference that they saw the train as soon as a careful person would have done. Moreover, plaintiff's claim is confined to weather and street conditions not shown to have been common nor in which defendant would be bound to anticipate that drivers, exercising the reasonable care demanded by the conditions, would be in danger of colliding with trains.

Because plaintiff seeks to impose a continuous and permanent duty upon defendant, greater than that provided by statute, the case is peculiarly one which calls for general observations and measurements. Plaintiff did not meet, by any evidence, defendant's testimony of observations and photographs which indicate sufficient view to a careful driver to obviate the necessity for special protective devices.

Reversed, with costs and without new trial.

Potter, C. J., and North, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.

The late Justice Nelson Sharpe took no part in this decision.