No. 34,072

EMMA BLEDSOE, by Her Father and Next Friend, WILL BLEDSOE, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

No. 34,073

JACKSON DODD, SR., and IDELIA DODD, *Appellees*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

No. 34,074

WILL BLEDSOE, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

(90 P. 2d 9)

Opinion filed May 6, 1939.

*W. W. Brown,* of Parsons, and *Dallas W. Knapp,* of Coffeyville, for the appellant.

*Harold McGugin,* of Coffeyville, and *D. Arthur Walker,* of Arkansas City, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: These were actions for damages which grew out of a collision of an automobile with a freight train at a railroad crossing on a paved highway. Plaintiff in No. 34,072 was a passenger in the automobile and the action was for her personal injuries. Plaintiffs in No. 34,073 are the parents of Jackson Dodd, Jr., who was a passenger in the automobile and who was killed in the collision. It

was an action for wrongful death. Plaintiff in No. 34,074 is the father of plaintiff in the first case and the action was for medical, hospital,. and other expenses he incurred for her because of her injuries in the collision. Though filed as separate actions, they were tried together in the court below. In each case the plaintiff, or plaintiffs, recovered, the respective amounts being $1,500, $2,999 and $500. Defendant has appealed. In this court the cases are consolidated.

The general facts may be stated as follows: From Coffeyville, a city of the first class with a population of about 18,000, the defendant's railroad runs northeastwardly to Parsons, about thirty miles away, and beyond. For possibly two miles from the city of Coffeyville it runs through the bottom or valley land of the Verdigris river. Through this valley defendant's roadbed is graded up two and one-half feet, or more in places, above the general level of the land about it, and in some places where there is an unusually low place in the land trestle work is used in lieu of the graded roadbed. From the northeast corner of the city of Coffeyville a paved federal and state highway, known as U. S. 169, runs directly north for several miles and then northeast to the city of Cherryvale. Less than a mile north of the city of Coffeyville it crosses the tracks of the defendant railroad, and about 200 feet north of the crossing it crosses the Verdigris river on a bridge. This highway was graded, improved and paved by the state and federal highway departments in accordance with plans prepared by the state highway department and approved by the federal highway department. Through the river valley it is more nearly on the grade of the valley than is the roadbed of defendant. At a point 150 feet north of the railroad crossing the top of the pavement is two and one-half feet lower than the top of the rails at the crossing. From this point south the pavement gradually rises until, at a point thirty or thirty-five feet north of the crossing, it is level with the top of the rails, continues level to about thirty feet south of the crossing, and then gradually declines as on the other side. Defendant had the railroad crossing signs required by statute (G. S. 1935, 66-2,121) on each side of the crossing, and the state highway commission had erected the highway signs usual to indicate the approach to a railroad crossing. To the west of the highway and south of the railroad were several large tanks for the storage of oil. The closest one of these to the highway was about 150 feet. Also, to the

west of the highway and north of the railroad was an oil refinery. The closest part of that plant to the highway is not stated in the abstract. South of the railroad crossing and near the city was a city park, with the amusement appliances lighted and used at night.

Defendant's exhibits 1 and 3, reproduced here, are photographs of the crossing taken November 11, 1936. Exhibit 1 was taken from a point 375 feet north of the crossing and exhibit 3 from a point 100 feet north of the crossing. The train shown on the track in exhibit 3 is not the one with which the automobile involved in this action collided, but the tank cars are similar to those in the freight train with which the automobile collided.

On the evening of November 9, 1936, four young people took a pleasure drive about the city of Coffeyville. The automobile in which they were riding was driven by L. C. Schaede. With him on the front seat was Opal Ross. Jackson Dodd, Jr., and Emma Bledsoe rode in the rear seat. About 9:30 o'clock Miss Ross was let out at her home. The other three continued to ride about town. Later in the evening, possibly about 11 o'clock, they drove north on U. S. 169 over this railroad and the Verdigris river bridge, possibly as far north as the town of Liberty, about seven miles from Coffeyville. At any rate, they were returning to Coffeyville shortly before midnight. As they were approaching the city one of the defendant's freight trains, consisting of sixty-three freight cars, exclusive of the caboose and the engine and tender, was moving northeast out of Coffeyville at about twenty miles per hour. As the parties in the automobile approached this crossing the side windows of the automobile were down. After they had crossed the bridge over the Verdigris river the plaintiff, Miss Bledsoe, saw one or more box cars moving along the railroad track. She said nothing to Mr. Schaede about that. The automobile was going about twenty-five or thirty miles per hour. Without any slacking of speed the automobile was driven into the side of the moving freight train. It struck an oil tank car, the fortieth car counting from the front of the train, the twenty-third counting from the caboose. As a result of this collision Miss Bledsoe received the injuries for which her action was brought, and Jackson Dodd, Jr., received injuries which resulted in his death. L. C. Schaede was not a witness in these cases. The record does not disclose to what extent he was injured, if at all, or whether he has an action pending against defendant.

EX. 1

EX. 3

Plaintiffs charged defendant with negligence in that no proper sign or warning was provided at this crossing. It was alleged that the crossing is located on a federal and state highway upon which there is especially heavy traffic in and out of Coffeyville to the north; that the crossing is an especially dangerous one in the nighttime, and that defendant knew that fact because of previous accidents which had happened at this crossing in the nighttime, and that considering the heavy traffic and this knowledge defendant was negligent in not maintaining an electric bell, alarm, light, or wigwag and/or an electric light at this crossing. Being near the city of Coffeyville, it was alleged that electricity was readily obtainable. As further reasons why the crossing was especially dangerous at night it was alleged that the large storage tanks of the oil company were so situated that they cut off the view of a train on the track from one approaching the crossing from the north, and that the lights of the oil refinery and in the city of Coffeyville reflected on the glass of an enclosed automobile so as to impair the vision of the driver. It was further alleged that a large amount of the freight carried by defendant over its track is petroleum products carried in tank cars, which become greasy and black and blend with the black-top surface of the highway in such a way that the cars are not easily seen by the driver of an automobile approaching the crossing. It was alleged that the ordinary wooden cross signs maintained by defendant at the crossing, as required by G. S. 1935, 66-2,121, had been permitted to become weather-beaten and the paint worn off so they could not easily be recognized. On this point there was no evidence. It was alleged that defendant was negligent in not having the crossing so constructed that the highway is the same grade as the crossing for thirty feet north of it, as required by G. S. 1935, 66-227. On this point the evidence was to the contrary. There was evidence that U. S. 169 is the principally traveled highway to and from the north of the city of Coffeyville, but the extent of that traffic was not shown. The evidence did not show that there was any other vehicle traveling on this highway either north or south of the crossing, or anywhere near it, at the time of the collision; hence, the amount of traffic there may have been on this highway at other times has no direct bearing on the collision here involved.

The evidence disclosed that the large storage oil tanks shown in the picture are situated south of the railroad, hence they could not obstruct the view of a train on the railroad track from one who ap-

proached it from the north. There was evidence that because of the grade of the railroad bed being higher than that of the level of the valley the lights of an automobile approaching this crossing when there were cars on it would shine under the cars. The evidence does not go far enough to establish the fact that all of the light from the automobile would go under the car and that none of it would go against the side. More than that, there was direct evidence that because a car approaching this crossing on the highway would be traveling upgrade for 150 feet that fact would throw the lights higher toward the side or the top of a car on the crossing. At the time of the collision here there was no car approaching this crossing from the other side, the lights of which could have interfered with the driver of the automobile in question.

There was evidence tending to show that the lights from the oil refinery and from the city of Coffeyville, particularly from an amusement park near the northeast part of the city, would reflect on the glass of the windshield and of the doors of the car so as to interfere with the driving. There is no evidence that this situation was especially unusual. It is a matter of common knowledge that in or near practically every city in the state there are lights from the city and from the buildings or industries near the highway which at times reflect upon the glass of an enclosed automobile, to the annoyance of the driver. In this case the evidence disclosed that the glass in the doors on each side of the car was down, hence the only glass there could have been any reflection upon was that of the windshield. There is no evidence here that there was any reflection on the windshield glass that annoyed or disturbed Schaede in the driving of the automobile, or that was noticed by any of the other occupants of the car.

We pass now to the legal questions argued. In support of the judgments plaintiffs argue that the statutory requirement respecting the maintenance by defendant of crossing signs (G. S. 1935, 66-2,121) is the minimum of its duty, and that where the situation is such that the crossing is an unusually dangerous one, due care on the part of the railway company requires it to provide other and additional signs or warning signals commensurate with the unusually dangerous condition of the crossing. On this point they cite *A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284, 38 Pac. 257; *Mo. Pac. Rly. Co. v. Moffatt*, 56 Kan. 667, 44 Pac. 607; 3 Blashfield's Cyclopedia of Automobile Law and Practice, Per. ed., p. 201, and cases collected

in the annotation in 71 A. L. R. 369. It is argued, also, that this proposition is recognized by certain language used in *Cross v. Chicago, R. I. & P. Rly. Co.,* 120 Kan. 58, 242 Pac. 469; *Jones v. Atchison, T. & S. F. Rly. Co.,* 129 Kan. 314, 282 Pac. 593, and *Sheets v. Baldwin,* 146 Kan. 596, 73 P. 2d 37, although in each of these cases final judgment was for the defendant. It may be conceded for the purposes of this case that the point is well taken, but we note the fact that in the cases of this class in which plaintiff recovered the train was approaching the crossing—not lawfully occupying it.

Plaintiffs further contend that whether a railroad crossing is unusually dangerous is a question of fact for the jury, citing 3 Blashfield's Cyclopedia of Automobile Law and Practice, Per. ed., p. 200, and cases collected in the annotation 16 A. L. R. 1277. This is true only when there is substantial, competent evidence that the crossing is unusually dangerous. Unless such evidence is produced the question is one of law for the court. The authorities on this point do not go so far as to authorize allegations to be made respecting any railroad crossing to the effect that it is unusually dangerous, and because of such allegations to say that the question is one for the jury. Examining the evidence in this case, we are unable to find anything that would justify a classification of the crossing in question as being unusually dangerous. The fact that it is on a paved federal and state highway and bears the principal vehicular traffic from one direction to or from a city is common, to a greater or less degree, with respect to all such highways near all the cities of the state, and as previously noted, the amount of traffic on the highway had nothing to do with this casualty, since there was no other traffic near by on the highway at the time. The fact that there were lights near by does not distinguish it from other highways leading into and near cities. The fact that the roadbed was two or three feet above the level of the valley does not render it unusually dangerous. Indeed, the upgrade of the pavement for 150 feet as one approached the crossing would be advantageous, for the reason that naturally the lights of the automobile would be thrown higher upon the side of a moving train. But we need not dwell on this point.

Over defendant's objection plaintiffs were permitted to introduce evidence that at some previous time there had been a similar collision at this crossing. There was no showing of the circumstances of that collision, or as to whose fault it was. The fact that a collision occurred, standing alone, is insufficient to establish negligence of

either of the parties involved (*Sheets v. Baldwin*, 146 Kan. 596, 597, 73 P. 2d 37, and cases there cited). The evidence should not have been admitted, even on the theory that it tends to show the crossing to be an unusually dangerous one, for it is entirely possible that the collision was solely the fault of the driver of the motor vehicle involved.

By the time of the trial an electric wigwag and lights had been installed at this crossing. Plaintiffs made much of that in the trial court and here. The evidence in the record makes it clear that these devices were not installed at the expense of the railroad company by reason of an order of the state highway commission made in pursuance of G. S. 1935, 68-414, the pertinent portion of which reads:

"When the state highway commission deems it advisable, said railroad company may be required by order of the state highway commission, to install and maintain suitable safety devices or warning signals at dangerous or obscure crossings to indicate the approach of trains."

On the other hand, the devices were installed by the state highway commission under a written agreement with defendant here that its men would install the devices and the state highway commission pay the cost thereof, which was done. In other words, this was done by the state as a highway improvement project, at its own expense. Obviously, the state highway commission did not regard the crossing as being so unusually dangerous that it would be justified in making an order requiring defendant to install additional safety devices or warning signals at its expense.

The signs to be constructed (G. S. 1935, 66-2,121; also by 68-414) and the signals to be given by railroad companies at highway crossings, are designed, primarily at least, to advise travelers on the highway of approaching trains. We are cited to no statute of our own which requires a railroad company to maintain signs or signals to advise travelers on the highway of trains actually on the track. It has been said with respect to such crossings that the railroad track itself is a sign of danger, and certainly a train, rightfully on the track at a crossing, is itself a sign of danger. Indeed, it is all the warning necessary to be given. There is no contention in this case that defendant's train was not rightfully on the track. All the parties in the automobile knew the railroad crossing was there; they had driven over it less than an hour previously. A railroad company is under no duty to do more for negligent drivers of motor vehicles than it is required to do for careful ones.

It is the general rule that when a train is rightfully on a crossing and a motor vehicle is driven into it, with resulting damages, the sole cause of such damages is the fact that the driver of the motor vehicle drove it into the train.

In *Schmidt v. Chicago & N. W. Ry. Co.*, 191 Wis. 184, 210 N. W. 370, plaintiff and two others were riding in the front seat of a Ford coupé about 1:20 a. m., and while so doing collided with a freight train moving across the highway and was seriously injured. The railroad company had voluntarily installed an electric alarm bell and wigwag at the crossing to signal the approach of trains. The jury found this device was not working at the time, but conceding that, the court said:

". . . we are confronted with the fact that the train was actually and physically upon and passing over the crossing at the time of the accident. It is well known that signal devices such as those in question are installed by railroad companies, sometimes voluntarily and sometimes pursuant to the requirements of law, not for the purpose of warning travelers upon the highway of the actual presence of a train upon the crossing, but for the purpose of warning them of the approach of a train. . . . It cannot be held that the railroad company should have anticipated that by reason of the defective operation of these signals plaintiff and her companions, or anyone else traveling along the highway, would collide with a freight train actually passing over the crossing. If any authority for this rather self-evident proposition be needed, the cases of *Nadasky v. Public Service R. Co.*, 97 N. J. Law, 400, 117 A. 478, and *McGlauflin v. Boston, Maine R. R.*, 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E 790, may be cited." (210 N. W. 370, 371.)

It was held that the driving of a car into the side of the moving train was the proximate cause of injury to plaintiff.

To the same effect see *Simpson v. Pere Marquette Ry. Co.*, 276 Mich. 653, 268 N. W. 769, and *Brown v. Southern Ry. Co.*, 61 F. 2d 399.

In *Coleman v. Chicago, B. & Q. R. Co.*, 287 Ill. App. 483, 5 N. E. 2d 103, it was held that the presence of a train rightfully occupying a crossing is adequate notice and warning to travelers, in the exercise of ordinary care for their own safety, that the crossing is occupied, and the railroad is not required to give additional signs, signals, or warnings, and no negligence can be imputed to it for its failure so to do.

In *Reines v. Chicago, M., St. P. & P. R. Co.*, 195 Wash. 146, 80 P. 2d 406, it was held:

"A train actually occupying a grade crossing supersedes all other warnings and gives actual notice of its presence, although it was more or less obscured by fog or weather conditions." (Syl. ¶ 3.)

In that case a long freight train was moving across the Lincoln highway, which is paved and carried considerable traffic. A car driven by one Olson, with whom Reines was riding, was driven into the side of the moving freight train, with the result that Reines was killed. The action was by the administrator of his estate for his wrongful death. It was held plaintiff could not recover, that the driving of the automobile into the side of the train by Olson was the proximate cause of death. For reasons stated in the opinion the court examined and cited a large number of cases supporting the rule applied by the court.

In *Incret v. Chicago, M., St. P. & P. R. Co.,* 107 Mont. 394, 86 P. 2d 12, the collision occurred at the crossing of a city street with a railroad track. There were gates that could be lowered on each side of the track, equipped with a red light, but these were frozen and were not in use. There was testimony that a watchman went to the center of the street and waved on the side on which the motorist was approaching. About 9:30 o'clock in the evening the motorist approached this crossing and crashed into defendant's freight train, approximately 2,000 feet in length, striking the train about the center. It was held that signal devices installed by railroads at crossings are not for the purpose of warning travelers on the highway of the actual presence of a train on the crossing, but to warn them of the approach of a train. It was further held that a train standing or moving over a crossing is an adequate warning without warning signals, unless the view of the motorist is obstructed. Held, the fact the motorist drove into the side of the moving train was the sole cause of the injury.

In *Burkhead v. Pennsylvania R. Co.,* 275 Ky. 841, 122 S. W. 2d 970, the motorist drove into the side of a freight train standing on a crossing in the city of Louisville about 10:30 p. m. The court held plaintiff failed to prove negligence on the part of defendant that constituted the proximate cause of the accident, and that the trial court properly refused to submit the case to the jury. In the opinion it was said:

"The purpose of signals at a railroad crossing is to warn travelers on the highway of the danger of an approaching train. . . . If appellant failed to see a freight car twelve feet high extending entirely across the street directly in front of him, it is hardly reasonable to believe that he would have seen a small sign on the side of the street." (122 S. W. 2d 970, 971.)

In *Trask v. Boston & Maine Railroad,* 219 Mass. 410, 106 N. E.

1022, a motorist collided with cars standing on a railroad crossing. It was held the evidence did not show any negligence of defendant, and that plaintiff could not recover.

In *McParlan v. Grand Trunk W. R. Co.*, 273 Mich. 527, 263 N. W. 734, about one o'clock in the morning, a motorist drove into a freight train crossing Lake Shore Drive in the city of Muskegon, and plaintiff, a passenger, was injured. It was held that the train's actual occupancy of the crossing was notice and warning of its own presence, and that the failure of defendant to operate statutory signals or devices was not negligence. It was further held, presumably a railroad maintaining the customary safeguards at crossings need keep no other, and that the evidence was insufficient to make the duty of the company to keep other warning signs than those required by statute at the crossing a jury question. It was further held the railroad's knowledge that other collisions had occurred between automobiles and trains occupying that crossing did not of itself obligate defendant to maintain additional safeguards, since a railroad need not provide greater warnings to negligent than to careful drivers.

In *Dolan v. Bremner*, 220 Ia. 1143, 263 N. W. 798, the collision occurred near the northwest corner of the town of Ackley, where a paved highway crosses the main line and two sidetracks of defendant. There was a fog and mist. The motorist ran into a refrigerator car standing across the highway. Plaintiff was a guest in the motorcar. It was held the railroad company can assume that in case of mist or fog a motorist will reduce his speed so as to enable him to stop within the range of his vision; that the failure of defendant to maintain signs or warning signals in addition to those required by statute, if constituting negligence as a matter of law, did not constitute the proximate cause of the injury. Further held, that where the railroad is making reasonable and legitimate use of crossings, presence of train on crossing is sufficient warning to persons using highway in absence of statute requiring additional signals.

In *Central of Georgia Ry. Co. v. Adams*, 39 Ga. App. 577, 147 S. E. 802, a motorist drove into the side of a moving train about 2 a. m. of an intensely dark, foggy and misty night. The negligence alleged was the defendant failed to have and maintain any light, bell, gong, or sign, or any signal apparatus which would, by the sounding or signal thereof, warn persons approaching or crossing of the presence of the train, and failed to have a flagman or other person to warn such travelers. It was held that it appeared from

the petition, which stated those facts elaborately, that the collision of the automobile with the train was caused solely by the negligence of the driver of the automobile, and that the trial judge erred in overruling a general demurrer to the petition. The same rule was applied in other Georgia cases where the train was standing on the crossing. (See *Burnett v. Louisville & Nashville R. Co.*, 58 Ga. App. 64, 197 S. E. 633; *Tidwell v. Atlanta, Birmingham & Coast Railroad*, 42 Ga. App. 744, 157 S. E. 534, and *Brinson v. Davis*, 32 Ga. App. 37, 122 S. E. 643.)

The following cases are to the same effect. The list is not intended to be complete: *Southern Ry. Co. v. Miller*, 226 Ala. 366; 147 So. 149; *Roberts v. Louisville & N. R. Co.*, (Ala.) 186 So. 457; *Chesapeake & O. Ry. Co. v. Switzer*, 275 Ky. 834, 122 S. W. 2d 967; *Scarborough v. Louisville & N. R. Co.*, 276 Ky. 292, 124 S. W. 2d 88; *Ausen v. M., St. P. & S. S. M. Ry. Co.*, 193 Minn. 316, 258 N. W. 511; *Schmidt v. Chicago & N. W. Ry. Co.*, 191 Wis. 184, 210 N. W. 370; *McParlan v. Grand Trunk W. R. Co.*, 273 Mich. 527, 263 N. W. 734; *Coleman v. Chicago, B. & O. R. Co.*, 287 Ill. App. 483, 5 N. E. 2d 103; *Dolan v. Bremner*, 220 Ia. 1143, 263 N. W. 790; *Gage v. Railroad*, 77 N. H. 289, 90 Atl. 855.

Our own cases are to the same effect: *Rhoades v. Atchison, T. & S. F. Rly. Co.*, 121 Kan. 324, 246 Pac. 994; *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 282 Pac. 593; *Sheets v. Baldwin*, 146 Kan. 596, 73 P. 2d 37.

See, also, *Shrewsbury v. Goodacre*, 135 Kan. 230, 10 P. 2d 1. One or more of our cases are cited in the late cases, above noted, from other states.

These decisions establish the general rule that the provisions of statutes relative to warnings and signs at highway crossings are intended to warn travelers on the highway of approaching trains; that they are not applicable to the situation when trains are rightfully on the crossing; that the cars on a crossing are themselves a sign of danger, and are sufficient notice to a traveler on the highway; that a railroad company is not negligent in the rightful use of its tracks and hence is not negligent in having its trains moving on its tracks over a highway crossing; and where one drives an automobile into the side of a moving train rightfully on the track crossing, the proximate, or sole, cause of the resulting injuries to himself and others occupying the automobile is the fact that the automobile was driven into the train.

Here and there we find a few cases like the late case of *Squyres v. Baldwin,* 191 La. 249, 185 ʹSo. 14, in which, because of exceptionally unusual circumstances surrounding the casualty, a guest in the automobile is permitted to recover. None of such exceptional circumstances is shown by the record in this case, and in any event these decisions seem to be out of harmony with many of our own cases and with the great weight of authority generally.

We regard the authorities above cited as controlling in this case. Some other questions are argued, but we deem it unnecessary to consider them separately. From the conclusion reached it necessarily follows that in each case the judgment of the trial court should be reversed with directions to enter judgment for defendant. It is so ordered.