## GOOD v. ATLANTIC COAST LINE R. CO.
### CHANCEY et al. v. SAME.
#### No. 10675.

Circuit Court of Appeals, Fifth Circuit.

April 20, 1944.

Wm. C. McLean, Wm. C. Pierce, and Manuel M. Garcia, all of Tampa, Fla., for appellants.

John B. Sutton and G. L. Reeves, both of Tampa, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

On February 12, 1942, about 3 o'clock in the morning, Daniel W. Good was driving a Ford coupe in an easterly direction along Grand Central Avenue in Tampa, Florida. Beulah Chancery was riding with him. The night was cold, dark and foggy, and a drizzling rain was falling. The automobile was equipped with only one windshield wiper, and because of weather conditions, Good was unable to see more than 15 to 18 feet in front of the car. He was driving at a speed of approximately 20 miles per hour and could not stop within the range of his vision. The left tires of the automobile were moving near the center of the street as he approached the Atlantic Coast Line Railroad crossing where a gondola freight car was standing on the tracks blocking the street. Good did not see the freight car in time to stop, and in the resulting collision his automobile was demolished and both he and Mrs. Chancey were injured. Actions by Good and Mrs. Chancey against the railroad resulted in judgments entered on directed verdicts in favor of the railroad, and they have appealed.

We find it unnecessary to discuss and pass upon the rulings of the court with reference to the counts in the two cases which were

dismissed on motion. With these counts left in the record nothing would be added to the case when we consider the evidence leading up to and having to do with the accident.

On April 12, 1895, the City of Tampa adopted Ordinance No. 130, which provided that gates, upon approval of the mayor, should be erected at the crossing where the accident in this case occurred. In 1933, the City of Tampa adopted another ordinance, No. 516-A, which provided that "It shall be unlawful for any person, firm or corporation to operate a railroad engine or train over any of the following grade crossings (Grand Central Avenue crossing, where this accident occurred, being included) without first having safeguarded said crossing by gates or flagmen in a manner sufficient to fence the railroad tracks against approaching vehicles."

Several years ago the railroad installed a signal gate and gong at the crossing. These gates and gong were used and operated by the railroad between the hours of 8 a.m. and 1 a.m. and after 1 o'clock in the morning the gates and gong would not be used, but a member of the train crew using this crossing from 1 o'clock in the morning until 8 a.m. would precede the train over the crossing. The record fails to disclose how long the train had been standing on the crossing on the night of the accident. Good testified that he had no knowledge of the matter.

Good was well acquainted with the crossing, having passed over it many times in going to and from his places of business in Tampa. After closing his restaurants, he had passed over this crossing on many occasions in the early morning hours before daylight. On the night of the accident he knew it was a foggy night, that visibility was poor, and that the lights of his car were affected by the weather conditions. He further knew, or ought to have known, that at the speed at which he was traveling it was impossible for him to stop his automobile after he saw the freight car. There was a street light directly over the crossing, but Good testified that he did not know whether it was burning at the time or not, although he testified further that he saw lights that were burning at a nearby drive-in stand and one neon sign. One witness who came up to the crossing a short time after the accident testified that he saw the train from 100 feet away and that he could probably have seen it farther had his view not been blocked by a building.

Viewed in the light most favorable to appellants, Good and Mrs. Chancey, the evidence clearly shows negligence on the part of Good, and this is the inescapable conclusion when we come to consider that he was driving his automobile at such a speed that he could not stop it before hitting a freight car standing in the middle of the street. Rayam v. Atlantic Coast Line R. Co., 119 Fla. 386, 161 So. 415; Stowers v. Atlantic Coast Line R. Co., 106 Fla. 102, 142 So. 882; Kimball v. Atlantic Coast Line R. Co., 132 Fla. 235, 181 So. 533; Clark v. Atlantic Coast Line R. Co., 141 Fla. 155, 192 So. 621; Denton v. Atlantic & St. Andrews Bay R. Co., 141 Fla. 153, 192 So. 624; Smith v. Southern R. Co., 5 Cir., 53 F.2d 186.

The case of Vassey v. Standard Oil Co., of Ky., et al., 5 Cir., 119 F.2d 589, is much like this case, and the law announced therein is not different from the applicable law in the courts of Florida. When a train is standing on a crossing, it is ordinarily, of itself, sufficient notice of danger, and it is unnecessary to use gates or flagmen in such cases to call attention to that which every prudent person should see. Under the common law, under the ordinances, and under the statutes and decisions of Florida, we think that neither flagman nor gate was required after the train had entered and was standing upon the crossing. Mabray v. Union Pacific R. Co., D.C., 5 F.Supp. 397; Bledsoe v. Missouri, K. & I. R. Co., 149 Kan. 741, 90 P.2d 9; Burkhead v. Pennsylvania R. Co., 275 Ky. 841, 122 S.W.2d 970.

The Florida statute on presumptions, Sec. 7051, CGL, now 768.05, Florida Stat.1941, F.S.A., is not decisive of a case such as this one, where one runs into a train standing on a crossing. Cline v. Powell, 141 Fla. 119, 192 So. 628; Denton v. Atlantic & St. Andrews Bay R. Co., 141 Fla. 153, 192 So. 624; Clark v. Atlantic Coast Line R. Co., 141 Fla. 155, 192 So. 621.

It affirmatively appears from all the testimony that the negligence of Daniel W. Good was the sole and proximate cause of the accident and the resulting injuries and damages which he and Mrs. Chancey suffered. On these facts, viewed in the light of the applicable law, it is manifest that a judgment against the railroad could not stand. A directed verdict was proper, and the judgments in both cases are affirmed.