No. 43,968

Bonnie M. Grisamore, as Administratrix of the Estate of Milo B. Grisamore, Deceased, *Appellant,* v. The Atchison, Topeka & Santa Fe Railway Company, a Corporation, *Appellee.*

(403 P. 2d 93)

Opinion filed June 12, 1965.

*Charles M. Cline,* of Wichita, argued the cause, and *Emmet A. Blaes, Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Stanley E. Wisdom, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda,* and *Richard A. Loyd,* all of Wichita, were with him on the briefs for the appellant.

*Charles W. Harris,* of Wichita, argued the cause, and *C. J. Putt, W. E. Treadway, J. B. Reeves* and *Roth A. Gatewood,* all of Topeka, *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Orval J. Kaufman, J. Ruse McCarthy, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew, Paul M. Buchanan,* and *Charles R. Moberly,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment sustaining a demurrer to plaintiff's petition.

On September 29, 1961, at about 12:15 A. M., Milo B. Grisamore was traveling south in a 1959 Chevrolet pick-up truck on St. Francis Street in the city of Wichita, Sedgwick County, Kansas. The street crosses certain railroad tracks used and maintained by the defendant in the 700 block south. As Grisamore reached the railroad tracks one of defendant's trains was blocking the crossing and his truck collided with one of defendant's cars injuring him and subsequently causing his death on September 30, 1961.

The specific facts with which we are concerned must be accepted as alleged in the petition and are as follows:

*Specific Negligent Acts of Defendant.* The 700 block on South St. Francis Street, in the area where it intersects with defendant's tracks and where the collision occurred, is a one-way street for southbound traffic, is poorly lighted, and is heavily traveled with two and three lanes of southbound traffic. In addition, the tracks cross the street at a grade and the view of the tracks, both to the east and to the west of the crossing, is obscured by buildings which are located a short distance from the street and the tracks . . . At the time of the collision the train was stopped and entirely

blocking the street. Defendant had two flagmen or switchmen on the south side of the train where there was no traffic, but none on the north side of the train to warn oncoming traffic. *All of the aforedescribed conditions rendered the crossing more than ordinarily dangerous, and the defendant failed to exercise that degree of reasonable care required commensurate with the conditions existing at and near the aforesaid crossing;* in addition, the defendant was negligent *per se* in violating certain city ordinances designed for the protection of the public. Specifically, the defendant was negligent in the following particulars in the operation of its train and the maintenance of the aforesaid crossing:

"(1) In failing to position flagmen, switchmen, or other employees on the north side of the train where they could be seen and could have warned Milo B. Grisamore and others of the presence of the train.

"(2) In failing to have the crossing area and train properly lighted for the view of plaintiff's husband and other approaching travelers.

"(3) In failing to maintain sufficient and adequate control and warning devices at the crossing to alert plaintiff's husband and other travelers of the existence of the dangerous crossing and the presence of the train at the crossing.

"(4) In failing to maintain its existing warning device in a safe and proper condition.

"(5) In failing to comply with Wichita City Ordinance 12.04.090 which reads as follows:

" 'Standing of cars near grade crossings. Whenever the tracks of a railroad cross a street or highway at a grade, it shall be unlawful to leave any railroad car or engine standing within thirty feet of the roadway unless the crossing is protected by a flagman.'

"(6) In failing to comply with Wichita City Ordinance 12.04.100 which reads as follows:

" 'Erection and maintenance of railroad signals.

"(a) At the railroad grade crossing listed in any schedule approved by the Board of Commissioners it shall be the duty of the designated railroad to maintain and operate a clearly visible electrical or mechanical railroad signal of a type approved by the traffic engineer.

"(b) All railroad signals erected in compliance with this section shall be considered as official traffic-control devices.' " (Emphasis supplied.)

The action was brought by the plaintiff for the benefit of the heirs at law of Milo B. Grisamore and was presented in two counts. Count one requested recovery in the sum of $25,000 for the wrongful death. Count two requested recovery in the amount of $3,000 for hospital, medical and funeral expenses, and $10,000 for the decedent's pain and suffering following the accident until the time of his death.

The defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action.

The trial court sustained the demurrer stating only that "the same is hereby sustained." The plaintiff has appealed.

It would appear from the briefs filed herein that the trial court sustained the demurrer on the grounds that the petition ( *a* ) failed to state facts showing that the defendant was guilty of actionable negligence, and ( *b* ) alleged facts showing that the plaintiff's cause of action was barred by the contributory negligence of the deceased.

It might be helpful if we first consider the general principles of law that should guide us in the determination of the issues presented. No general rule of law is available from which the rights and liabilities growing out of all accidents occurring at railroad crossings may be determined. It necessarily results that each individual case must be determined on its particular conditions and circumstances. As was stated in *Drake v. Moore*, 184 Kan. 309, 315, 336 P. 2d 807:

". . . There are, of course, certain fundamental principles of law applicable to negligence actions generally, but in the final analysis the facts of each particular case determine its decision when tested by those principles. ( *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 617, 185 P. 2d 158; and *Townsend, Administrator v. Jones*, supra. )"

It may be suggested, for the purpose of avoiding two separate discussions, that the same decisions will give us general rules for determining both the negligence of the railroad and the contributory negligence of the driver of the vehicle at the crossing. The duty of a railroad to a motorist approaching a crossing is directly affected by the care required of the motorist. If the motorist would have been able to see the hazard had he looked and been able to avoid the collision had his automobile been in proper condition and under proper control, the railroad has no obligation which could result in its negligence.

It was stated in *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 282 Pac. 593, on page 315:

". . . The *railway company's duty extended no further than to exercise reasonable care,* and it was not required to foresee that on one night of a period of history the driver of a lawfully equipped and operating truck might be so completely engulfed in the Cimmerian darkness, impenetrable fog and dense train-engine smoke that he could not apprehend a train was there, and take the extraordinary precautions necessary to protect him from projecting his truck against the side of the train." (Emphasis supplied.)

A railroad company need not anticipate that a motorist will be negligent. If the conditions and circumstances are such that a motorist exercising due care in the operation of a properly equipped vehicle will see the railroad cars standing on a crossing in time to avoid an accident the railroad may assume that the operator will do so and it is not required to take precautions to avoid such

a collision. It has a right to make a reasonable use of a crossing, and ordinarily the presence of a train on the crossing is of itself an adequate warning to a driver of a vehicle on a highway and special safeguards need not be employed in the absence of unusual surroundings, conditions and circumstances. In *Harmon v. Atchison, Topeka & S. F. Rly. Co.,* 171 Kan. 403, 411, 233 P. 2d 489, it was stated:

> "We think the location of this sign had no causal connection with the accident. The rule is well stated in *Corkill v. Thompson,* 169 Kan. 38, 217 P. 2d 273, where it was held:
> " 'The purpose of highway signs or signals indicating a railroad crossing is to warn of approaching trains and not of trains already occupying the crossing.' "

In *Jones v. Atchison, T. & S. F. Rly. Co.,* supra, it was stated on page 315:

> "The petition alleged that when the accident occurred it was long after sunset, it was dark, there was fog, there was dense smoke from the engine of the train, and the railway company did not provide signal lights or other warning that the highway was obstructed by the train. *There was no allegation that there was anything peculiarly dangerous about the crossing which made it reasonably necessary for the railway company to have gates, or lights, or a gong, or a watchman at the crossing, to warn highway users against attempting to cross.* It was just dark and foggy and smoky. There is no statute which requires a railway company to warn travelers there is a freight train across the highway when those conditions exist, and a railway company rests under no common-law duty to take such precautions for the benefit of drivers of auto vehicles." (Emphasis supplied.)

Although railroads are not insurers of the safety of persons approaching their tracks for the purpose of crossing, they must exercise due care for the safety of travelers at public crossings. This anticipates the exercise of ordinary care depending on the situation and surroundings at the crossing. Unusual dangerous conditions prevailing at the crossing may require the railroad to anticipate that the mere presence of the train standing thereon will not adequately warn users of the highway. Such special conditions may create an unusual hazard making additional warnings necessary.

Where a crossing is unusually dangerous such reasonable care must be exercised by the railroad as common prudence dictates. Where a standing train is blocking a crossing it is under a duty to use reasonable means to warn and avoid injury to the traveling public. The character of the means will depend on the particular conditions and circumstances surrounding the crossing. A railroad may be liable for injuries received by a motorist colliding with a

railroad car on a crossing where normal headlights do not reveal the obstruction or where a trap is created by an illusion of safety revealed by the headlights.

The rules that a motorist who drives into a railroad car standing on a crossing, which was not unusually dangerous, is guilty of contributory negligence is an application of the rule that a driver of a motor vehicle must correlate his speed with his ability to stop within the range of his vision. (*Jones v. Atchison, T. & S. F. Rly. Co.*, supra; *Sheets v. Baldwin*, 146 Kan. 596, 73 P. 2d 37.) The rule as applied to railroad crossing accidents must therefore be subject to the qualifications or exceptions applied to highway collisions which we have recognized. In *Drennan v. Penn. Casualty Co.*, 162 Kan. ·286, 289, 176 P. 2d 522, it was stated:

"Furthermore, we have recognized qualifications or exceptions to the general rule that a driver must be able to stop his car within the clear distance ahead. For instance, if he is confronted with a sudden emergency not of his making— such as the sudden entrance of another car from a side road—it would be wholly unreasonable to say, and we have not said, that negligence is shown, as a matter of law, if he is unable to stop his car in time to avoid a collision. It is perhaps inaccurate to say that such situations constitute exceptions to the rule. *It might be more accurate to say that the rule was never intended to apply except to situations which an ordinarily prudent man would or should anticipate. . . .*" (Emphasis supplied.)

In *Sponable v. Thomas*, 139 Kan. 710, 719, 33 P. 2d 721, in holding the plaintiff not guilty of contributory negligence, it was said:

"Was the plaintiff guilty of contributory negligence? The argument is based on the propostion that he was not driving at a rate of speed that would enable him to stop within the distance he could see objects ahead of him. The evidence showed that the plaintiff's car was equipped with standard lights, which were in operation, and that the beam or ray of light showed forward focusing on the ground about thirty feet ahead of the car, and that the lights were about thirty-six inches above the ground; *that the truck was unpainted and a dark, drab color;* that it had no lights, either tail or other lights at the rear, nor were there any flares or other lights to warn of its location, and that the lower portion of the back end of *the truck was about forty-seven or forty-eight inches above the ground. . . .*" (Emphasis supplied.)

We recognized the same exceptions or qualifications in *Drake v. Moore*, supra, page 314, where we said:

". . . Decedent, while driving down the highway on a dark, rainy night, collided with the rear end of a semi-trailer and truck that stood squarely in the middle of the traffic lane in which he was driving. There were no lights burning on the truck or trailer to warn oncoming motorists of such obstruction, as is required by law. *The rear end of the trailer was a dull, drab and .dirty color, making it difficult to be seen at night. The truck and trailer were*

*stalled on an incline and the trailer was so high above the pavement level that it was above the range of decedent's headlights;* as a result, the obstruction could not be seen until he was too close to avoid the collision.

"Under these facts and circumstances and in view of the presumption that decedent exercised due care for his own safety, it is clear that reasonable minds could differ on the question of whether decendent was guilty of contributory negligence. It was therefore a question of fact for the jury. Moreover, decedent, proceeding along the highway, had a right to assume there were no hidden, undisclosed defects, such as an unlighted truck, standing in the path of travel. . . ." (Emphasis supplied.)

We also recognized further qualifications and exceptions to the rule in *Winfough v. Tri-State Insurance Co.,* 179 Kan. 525, 528, 297 P. 2d 159, where it was held that the trial court erred in sustaining a demurrer to the petition where the issues were stated as follows:

". . . He next contends that under the circumstances alleged as to the color of the parked truck and the fact he came on it after coming over the crest of a hill, and other allegations, he was not bound by the rule that one operating his vehicle in the nighttime must have it under such control he can stop it within the range of his lights and that the rule does not apply where the obstruction is of such a character and so placed that a driver of a motor vehicle properly equipped with lights and brakes, driven at a reasonable speed, is unable to see the obstruction in time to avoid colliding with it. *Hayden v. Jack Cooper Transport Co.,* 134 Kan. 172, 5 P. 2d 837; *Womochil v. List & Clark Construction Co.,* 135 Kan. 695, 11 P. 2d 731; *Deardorf v. Shell Petroleum Corp.,* 136 Kan. 95, 12 P. 2d 1103; *Frakes v. Travelers Mutual Cas. Co.,* 148 Kan. 637, 84 P. 2d 871; and *Towell v. Staley,* 161 Kan. 127, 166 P. 2d 699, cited by the appellant support the contention as made. . . ."

Also in *Hayden v. Jack Cooper Transport Co.,* 134 Kan. 172, 5 P. 2d 837, this court considered contributory negligence where a motorist rammed into a low trailer which was dark in color and held:

"The rule that one driving an automobile in the nighttime must so operate his car that he may stop it within the range of vision of his headlights, is applicable in cases where vehicles or other objects on the highway may be seen by the aid of proper lights, but where an obstruction was of such a character and so placed that a motorist driving his car properly equipped with lights and brakes, at a moderate speed, is unable to see an obstruction in time to prevent colliding with it, and is otherwise free from negligence, he cannot be held guilty of contributory negligence as a matter of law." (Syl. 1.)

It would appear from the foregoing cases that where a crossing is unusually hazardous the question of whether a driver of a motor vehicle is guilty of contributory negligence is a question of fact if the rays from the headlights are absorbed by the color of a standing railroad car; if there is a blending of the train with the street

or general background; if the vision of the motorist approaching the crossing is affected by street lights near the crossing or on opposite side of crossing, or where the railroad car was on a grade so that the light beams projected under and past standing cars.

We would receive but little assistance from the numerous conflicting cases from other jurisdictions. The issues have been determined by our own decisions. However, those wishing to research the decisions of courts of other juridictions may see 74 C. J. S., Railroads, § 710, *et seq.*, and the extensive annotation in 84 A. L. R. 2d 813, *et seq.*

Considering, as we are compelled to do, that the demurrer admits all facts well pleaded; that the allegations of the petition must be liberally construed in favor of the pleader, and all inferences to be drawn therefrom must be indulged in his favor (*Carpenter v. Strimple*, 190 Kan. 33, 372 P. 2d 571; *Redmond v. Meier*, 192 Kan. 730, 391 P. 2d 39), we cannot say as a matter of law that the petition fails to state a cause of action.

Plaintiff may have assumed a heavy burden when she undertook to prove the material allegations of the petition but the law gives her the opportunity to try.

The petition alleges that:

". . . All of the aforedescribed conditions rendered the crossing more than ordinarily dangerous, and the defendant failed to exercise that degree of reasonable care required commensurate with the conditions existing at and near the aforesaid crossing; . . ."

This is a necessary allegation if a petition for damages resulting from injury at a railroad crossing is to be sustained as against a demurrer.

The conditions which it was alleged rendered the crossing more than ordinarily dangerous consisted of a poorly lighted, heavily traveled one-way street with two and three lanes of traffic; the tracks crossed the street *at a grade* and the view of the tracks both to the west and east were obstructed by buildings which are located a short distance from the street.

Whether the surrounding conditions did, as alleged in the petition, render the crossing more than ordinarily dangerous is a question of fact which plaintiff must establish by her evidence if she is to be successful in her action.

The petition alleges that the negligence of the defendant consisted of failure to maintain sufficient lights and warning signals; failure to properly position flagmen, and failure to comply with

city ordinances as to flagmen and mechanical or electrical railroad signals. These matters also present questions of fact once the evidence establishes that surrounding conditions render the crossing more than ordinarily dangerous.

Appellee relies on *Eason v. Missouri Pacific Rld. Co.*, 191 Kan. 39, 379 P. 2d 351, and cases therein cited in support of the order sustaining the demurrer. The case is readily distinguishable from the case now before us for decision. The material allegations of the petition in the Eason case were quoted in the opinion and it is disclosed that there was no allegation that the crossing was unusually dangerous. This constituted a fatal defect. If the crossing was not unusually dangerous the railroad owed no particular duty to a motorist attempting to cross the tracks.

The Eason case followed *Jones v. Atchison, T. & S. F. Rly Co.*, supra, where this court in concluding that a demurrer was properly sustained to the petition stated: ". . . There was no allegation that there was anything peculiarly dangerous about the crossing . . ." (p. 315.)

Our attention is also called to *Bledsoe v. M.-K.-T. Rld. Co.*, 149 Kan. 741, 747, 90 P. 2d 9, where it was stated:

"Plaintiffs further contend that whether a railroad crossing is unusually dangerous is a question of fact for the jury, citing 3 Blashfield's Cyclopedia of Automobile Law and Practice, Per. ed., p. 200, and cases collected in the annotation 16 A. L. R. 1277. *This is true only when there is substantial, competent evidence that the crossing is unusually dangerous. Unless such evidence is produced the question is one of law for the court.* The authorities on this point do not go so far as to authorize allegations to be made respecting any railroad crossing to the effect that it is unusually dangerous, and because of such allegations to say that the question is one for the jury. Examining the evidence in this case, we are unable to find anything that would justify a classification of the crossing in question as being unusually dangerous . . ." (Emphasis supplied.)

The Bledsoe case is simply authority for the general rule that the plaintiff must not only plead but must also prove that the crossing was unusually dangerous.

The same rule was followed in *Corkill v. Thompson*, 169 Kan. 38, 40, 217 P. 2d 273:

". . . The rule is that the question of whether a railroad crossing is unusually dangerous is a matter of law unless substantial, competent evidence of its dangerous character is introduced (*Bledsoe v. M-K-T Rld. Co.*, 149 Kan. 741, 90 P. 2d 9, and authorities cited therein). The evidence does not disclose that the crossing was unusually dangerous. . . ."

Both the Bledsoe and the Corkill cases were dealing with the sufficiency of the evidence to establish that the crossing was unusually dangerous after the cases had been tried on the pleadings. The sufficiency of the petitions was not questioned.

We are forced to conclude that, measured by the rules of law announced herein, the allegations of the petition were sufficient to constitute a cause of action as against a demurrer.

The judgment is reversed.

APPROVED BY THE COURT.

PARKER, C. J., and PRICE, J., dissent.