ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Missouri Corporation, and Leonard Paul Brown, Plaintiffs in Error,

v.

H. J. POWELL, Defendant in Error.

No. 40204.

Supreme Court of Oklahoma.

Oct. 1, 1963.

E. D. Grinnell, Jr., St. Louis, Mo., and Franklin, Harmon & Satterfield, Oklahoma City, for plaintiffs in error.

Cargill, Cargill & Chiaf, Oklahoma City, for defendant in error.

BLACKBIRD, Chief Justice.

At 4:30 o'clock in the morning of September 6, 1960, the defendant in error, hereinafter referred to as plaintiff, was driving his truck-tractor, with dual-wheel tandem trailer attached, in a westerly direction on four-laned West Reno Street in Oklahoma City, when the rear portion of the trailer was struck on its right, or north, side by a diesel-powered switch engine, owned and operated by the above named railway company, traveling in a southerly direction across the street on the single track which traverses said street's width in its 900 block. The impact of the collision was not sufficient to turn over the trailer and truck before the switch engine stopped a little south of the middle of the street, but the drawbar, on the front of the engine, struck the rear pair of the 4 wheels under the rear end of the trailer, and, as it skidded the rear end of the trailer a few feet south on the street's surface, it jammed the last pair of wheels under the truck's rear, crossways into the forward pair, knocking that pair's axle loose from the trailer's rear springs, as well as blowing out one of the trailer's rear tires.

After the police were called to investigate the accident, plaintiff directed the employees of a wrecker service in pulling the rear pair of the trailer wheels into place, before the trailer was taken away for repairs. As the truck or tractor was not damaged, plaintiff procured a friend in Durant, his home city, to bring his trailer to Oklahoma City and transfer the load of roasting ear corn in plaintiff's trailer over to the friend's trailer, and then, by using plaintiff's truck to pull the substituted trailer, accompanied said load of corn to its destination at Lubbock, Texas. After the accident, plaintiff's trailer was repaired, and he has continued to use it in his cross-country hauling business.

In the amended petition plaintiff filed in this action against the railway company and its switch engine engineer, Brown, as defendants, for damages he allegedly sustained therefrom, the collision was said to have been caused by said defendants' negligence in operating the "train" at the "high, reckless and dangerous rate of speed of 25 miles per hour", not being able to stop it in the assured clear distance ahead, and in failing to ring any bell, or sound any warning of its approach to the street crossing. In his first cause of action, plaintiff alleged that, by reason of the collision, he sustained "a profound physical and mental shock", that his pelvis was "tipped and tilted", that he sustained an injury to the lumbar region, and an acute strain of the lumbo-sacral muscles of his back, " * * * that he suffers and will continue to suffer severe and excruciating pain, that his injuries are progressive and permanent to his damage in the sum of $45,000.00." In a second cause of action, plaintiff prayed for the sum of $750.00 as the sum he had been required to expend for medical services and treatment.

Among other preliminary pleadings filed by the defendants, was a motion to require plaintiff to submit to a medical examination by a doctor of their choice, claiming entitlement thereto under this court's opinion in Transport Insurance Co. v. McAlister, Okl., 355 P.2d 576. The trial court overruled this motion in May, 1961, and thereafter defendants filed their answer containing a general denial, and the following more specific allegations:

"2. That defendants were without fault in the premises in that the train was being operated in a careful and prudent manner, that ample warning was given to the approaching public in that signs on the highway were present showing the presence of the crossing and the engine bell and whistle were being sounded as it approached said crossing.

"3. That the accident in question occurred solely through the carelessness and negligence of the plaintiff, H. J. Powell in that he recklessly operated his truck toward the crossing at Reno

Street without attempting to make any determination that the tracks were clear; that said plaintiff was guilty of contributory negligence.

"4. That said accident happened because of an unavoidable accident; that said plaintiff, H. J. Powell, is not injured, but in fact, is feigning injuries and is malingering."

When the cause came on for trial, after plaintiff had filed a reply denying all of defendants' material allegations inconsistent with his amended petition, plaintiff's counsel, during the course of his opening statement, predicted the evidence would show that plaintiff has a wife and family and, in substance, that trucking is his only source of income. The court sustained defense counsel's objection to this statement as being beyond the scope of plaintiff's pleadings.

At the trial, there was a sharp conflict between the testimony of witnesses for the plaintiff, and others for the defendants, as to whether the switch engine's bell and whistle were sounded as it approached the crossing. Other evidence indicated that the railway company's switch engines both push, and pull, single railroad cars, as well as groups of them, north, as well as south, on the track across the street, that visibility of the track's street crossing, both from the view of a switch engine's crew, and from that of motorists on the street, differs, depending on which side of the street and crossing the intersection is approached. It was also shown that the defendant railway company's rule requiring a switching crew's brakeman to stand at the crossing and signal, or warn, street traffic of a train's approach, applies only when the engine is pushing the train from behind (in which case the engineer's and fireman's view of the crossing is limited) rather than when the engine is pulling a car or train.

During the cross examination of the defendants' witness, J. O. Thompson, who was a switchman on the involved switch engine at the time of the collision, plaintiff's counsel asked the witness, and obtained an affirmative answer to, the question: "Do you know of any prior collisions at this crossing?" The witness's testimony was then interrupted by Mr. Satterfield, counsel for the defendants, and the following occurred:

"* * * MR. SATTERFIELD: Just a minute, I want to make my objection first.

"MR. CHIAF: I want to prove that they had knowledge that this was a dangerous crossing.

"MR. SATTERFIELD: Wait a minute now, that is beyond the scope of the issues Your Honor, in the first place—

"MR. CHIAF: No, it is not.

"THE COURT: Go ahead and make your record.

"MR. SATTERFIELD: This is beyond the scope of the pleadings, not alleged in the petition, and also that there has been no showing that any other accident occurred under the same circumstances of light and darkness, with the trains and the automobile (and/or) truck approaching from the same direction, and in the absence of this showing this evidence is fatally prejudicial and has no probative value.

"THE COURT: Overruled, go ahead.

"Q (By Mr. Chiaf): Well, you knew that the railroad had previous collisions there?

"A Yes, sir.

"Q Did you know then that it was a dangerous crossing?

"MR. SATTERFIELD: Your Honor may I ask that this be tied up before Mr. Chiaf goes further by showing any other accidents at this crossing?

"THE COURT: Overruled.

"MR. SATTERFIELD: At this time the defendant moves for a mistrial on this basis.

"THE COURT: Overruled."

Thereafter plaintiff's counsel pursued the same line of questioning with three of defendants' other witnesses, who had been members of the switch engine's crew.

After the defendants had introduced their evidence and rested, and plaintiff had reopened his case with rebuttal evidence, and defendants' motion for a directed verdict had been overruled, defense counsel recalled the witness J. O. Thompson to the stand, and the following ensued:

"* * * Q Mr. Chiaf asked you if you had ever been involved in another accident—

"MR. CHIAF: I am going to object, if the Court please, this is improper redirect.

"THE COURT: It will be sustained.

"MR. SATTERFIELD: May I appeal to the Court, in its discretion, to allow us to reopen on the basis that we want to show that the one accident which has been proved was in no way like the accident here, that they were pushing instead of pulling, and the train was coming from the opposite direction.

"THE COURT: *I sustained an objection to that.*

"MR. SATTERFIELD: No, sir; I don't think so.

"THE COURT: *I think I did. The objection will be sustained.*

"MR. SATTERFIELD: Note our exception and at this point the defendants make the offer of proof that if this witness, J. O. Thompson, were allowed to testify, he would state that the accident to which he referred when he was cross-examined by Mr. Chiaf was in no way similar to the accident involved in this trial, but instead that that accident was one in which the railway cars were being pushed across the crossing in a northerly rather than a southerly direction, and that the crossing was flagged from the ground, and further that the accident occurred in 1951.

"MR. CHIAF: We object to that as improper rebuttal.

"THE COURT: The objection will be sustained.

"MR. SATTERFIELD: Exception.

* * * * * *

"MR. SATTERFIELD: For the record, we renew our various motions at this time, following the attempted rebuttal.

"THE COURT: Overruled.

"MR. SATTERFIELD: Exception." (Emphasis ours).

Upon submission of the cause to it, the jury returned a general verdict for plaintiff in the sum of $26,854.80, and judgment was entered accordingly. After the overruling of their motion for a new trial, defendants perfected the present appeal.

 For reversal, defendants urge seven propositions dealing with assigned errors in the trial court proceedings, including said court's refusal to require plaintiff to undergo a physical examination by an "impartial" physician, alleged erroneous instructions to the jury, and the alleged misconduct of plaintiff's attorney in the presence of the jury. They also charge that the verdict is grossly excessive, appearing to have been rendered under the influence of passion and prejudice, especially in view of the fact that plaintiff alleged no impairment of his earning capacity. Their Proposition I is as follows:

"The trial court erred in allowing proof of a prior accident at the crossing in question without requiring proof that it was similar to the accident involved in this case and in refusing over defendants' objections to allow defendants to prove dissimilarity of said accident."

This proposition obviously pertains to the part of the trial record, hereinbefore referred to and quoted from, containing the testimony of J. O. Thompson and other members of the switch engine's crew, who, as we have shown, were interrogated concerning previous accidents at the same railroad crossing. In support of this prop-

osition, defendants cite Foreman v. Chicago, R. I. & P. Ry. Co., 181 Okl. 259, 74 P.2d 350, wherein this court held:

"In order that evidence of other accidents may be admissible, it must appear that they happened at the same place and while it was in the same condition and that the accidents were of a similar nature to the one involved in suit."

This syllabus is in accord with the general rule. See Ross v. Atchison, T. & S. F. R. Co., 141 Cal.App.2d 178, 296 P.2d 372, Gillham v. St. Louis Southwestern R. Co., Tex. Civ.App., 241 S.W. 512, and other cases discussed in the Annotations at 70 A.L.R.2d 167, 198 ff. In the more recent case of Horn v. Chicago, Rock Island & Pac. R. Co., 187 Kan. 423, 357 P.2d 815, the Court quoted its previous opinion in Bledsoe v. Missouri-Kansas-Texas R. Co., 149 Kan. 741, 90 P.2d 9, in which it said (inter alia):

" 'Over defendant's objection plaintiffs were permitted to introduce certain evidence that at some previous time there had been a similar collision at this crossing. There was no showing of the circumstances of that collision, or as to whose fault it was. The fact that a collision occurred, standing alone, is insufficient to establish negligence of either of the parties involved. (citing). The evidence should not have been admitted, *even on the theory that it tends to show the crossing to be an unusually dangerous one,* for it is entirely possible that the collision was solely the fault of the driver of the motor vehicle involved.' 149 Kan. at pages 747, 748, 90 P.2d at page 14.

"During the discussion as to the admissibility of evidence of the collision occurring thirteen days prior to the one here in question it was brought out that the car involved in that collision was being driven by an airman stationed at the Salina Air Base, and that it approached the crossing *from the north* and was struck by a train approaching *from the southwest*—circum-

stances just the *opposite* from those in the instant case. Further, *there was no showing whether that collision occurred in the daytime or nighttime; whether the train involved was a freight or passenger train; what the speed of the train was claimed to have been, or as to the speed of the vehicle; and neither was there any showing as to the traffic or weather · conditions, the view of the driver, or any other facts or conditions showing any similarity to the collision here involved—other than the fact such collision occurred at the same crossing. The mere fact of the former collision was all that was offered to be proved.*

"We think that clearly, under all of the facts and circumstances, the evidence of the prior collision was properly excluded." (Most emphasis added).

Under the above decisions, the objected-to testimony plaintiff's counsel elicited from defendants' witnesses (as hereinbefore shown) was not admissible, even assuming the crossing had been claimed to be an unusually dangerous one—a matter whose place as an issue in this case is rather doubtful on the basis of plaintiff's permitted pleading (and it is not contended in this case that said pleading might be considered as having been amended to conform to the proof).

We recognize that a judgment in conformity with a verdict should not be reversed on account of the admission of inadmissible evidence unless such admission appears to have been prejudicial, but (to paraphrase our reasoning in Atchison T. & S. F. Ry. Co. v. Aynes, Okl., 271 P.2d 312, 314, 46 A.L.R.2d 930) the evidence on the issues of whether or not the switch engine's headlight was burning, and its bell and whistle were sounded, as it approached the crossing, was so nearly in balance that the admission of the objectionable evidence may well have resulted in an unwarranted inference by the jury of defendants' negligence in this case largely from the occurrence of one or more previous accidents

at the same crossing. Such conceivable up-setting of a balance in the evidence of this case by the conscious, or unconscious, consideration of such incompetent evidence, would almost certainly result in an injustice, and may well have been a factor in bringing about the verdict, which defendants earnestly contend is disproportionate to the only detriment of which there is tangible proof, i. e., the damages to plaintiff's trailer. These considerations, and other occurrences during the trial, of which defendants' argument complains with an appearance of merit, but which are not dealt with herein because they may not re-occur at a future trial of the case, impel us to the conclusion that the trial court committed reversible error in overruling defendants' motion for a new trial. Accordingly, said order and judgment is hereby reversed, and this case is remanded to said court with directions to vacate same, and sustain defendants' said motion.

HALLEY, V. C. J., and DAVISON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.