**UNITED STATES COURT OF APPEALS**

**Filed 10/17/96**

**TENTH CIRCUIT**

JACK LANGSTON; CAROLYN
LANGSTON,

      Plaintiff-Appellant,

v.

MISSOURI PACIFIC RAILROAD
COMPANY, a Foreign Corporation, d/b/a
Union Pacific Railroad Company,

      Defendant-Appellee**.**

No. 95-7122
(D.C. No.CV-94-352-B)
(E.D. Oklahoma**)**

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR,** Chief Judge; and **PORFILIO** and **EBEL**, Circuit Judges.

Jack and Carolyn Langston raise four separate allegations of reversible error by the

trial court in this appeal from a final judgment in favor of Missouri Pacific Railroad

Company (the Railroad) arising from an automobile-train collision in which Mr. Langston

was severely injured.  The Langstons contend the trial court erroneously:  (1) excluded

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

evidence of prior accidents and complaints because it improperly applied an overly strict "substantial similarity" standard to evidence offered only to establish "notice"; (2) overruled the Langstons' motion for mistrial after the Railroad improperly introduced "highly prejudicial and irrelevant information to the jury"; (3) excluded evidence regarding an alleged factual dispute over the track's classification and speed limit; and (4) instructed the jury on Oklahoma's "assured clear distance" statute despite the fact that the accident did not involve a rear-end collision. We conclude the trial court committed no errors in its various rulings and affirm.

Jack Langston was traveling eastbound on Gray Oaks Road in Wagoner County, Oklahoma, when his automobile was struck by a Missouri-Pacific train. The evidence presented at trial established that the train was traveling southbound at 42 to 44 miles per hour and Mr. Langston's car was traveling eastbound at approximately 25 to 35 miles per hour. When the collision occurred, Mr. Langston's car was either stopped on the track or backing off the track. The automobile had skidded approximately 27 feet before coming to a stop, remaining on the track for three to five seconds before the front of the train collided with the vehicle's left side. At the time of impact, the car and train formed a 90 degree angle.

The Langstons filed this action against the Railroad, claiming injury and loss of consortium. Before trial, the Railroad filed a Motion in Limine seeking to exclude evidence of prior accidents and complaints involving the Gray Oaks Road crossing. In

response, the Langstons asserted the evidence was being offered to prove prior notice to the Railroad that the crossing was extra-hazardous. Relying on *St. Louis-San Francisco Ry. Co. v. Powell*, 385 P.2d 465 (Okla. 1963), the district court ruled the evidence must concern incidents "of a similar nature, occurring under the same or similar circumstances and occurring at the same location." After a hearing outside the presence of the jury to determine whether the incidents met the criteria established in *Powell*, the court granted the Railroad's motion in part, ruling when the Langstons' experts offered opinion testimony on whether the crossing was extra-hazardous, that testimony would be limited to incidents involving "the same or similar approach to the crossing as that taken by [Mr.] Langston at the time of the collision and not stray to other approaches or other directions."

At trial, the Langstons theorized the accident occurred because Mr. Langston's view of the train was obscured by vegetation in the northwest quadrant of the crossing and the train crew negligently failed to blow the train whistle until it was too late for Mr. Langston to stop safely. Based on this theory of the case, the trial court limited evidence of prior accidents and complaints to those involving the northwest quadrant or a failure to warn drivers with the train's whistle.

On appeal, the Langstons contend the court abused its discretion in excluding evidence of prior accidents and complaints because the court applied *Powell's* "substantial similarity" rule in an unnecessarily strict manner. The Langstons

acknowledge that test means evidence of other accidents is not admissible unless it appears the accidents occurred at the same place and under the same conditions as the accident involved in the present suit. They argue, however, a strict application of the "substantial similarity" test is required only for evidence used to prove the ultimate issue whether the crossing was extra-hazardous. They claim a more relaxed standard should be applied to evidence used to prove *notice* of extra-hazardous conditions requiring additional signals and warning signs. Because the Langstons offered the evidence of prior accidents to prove the Railroad was on notice as to the extra-hazardous nature of the crossing, they maintain the court erred in excluding the evidence simply because it did not concern northwest quadrant activity.

Additionally, the Langstons argue the court's reliance on **Powell** is improper because the case has been "rendered obsolete by the development of crossing evaluation techniques and the adoption of the Federal and Oklahoma Evidence Codes in the succeeding 30 years." The Langstons claim when **Powell** was decided, expert witnesses could not testify about "ultimate issues" for fear of invading the province of the jury. Under the prevailing evidence codes, however, experts may now offer opinions about "ultimate issues."

The Langstons argue application of the **Powell** limitation prevented the jury from hearing the factual and engineering foundation for their expert's testimony which relied

on more accident information than the mere facts of collisions involving the northwest quadrant. They argue such restrictions are unnecessary when the issue is one of notice.

"The admission or exclusion of evidence lies within the sound discretion of the trial court and cannot be reversed absent an abuse of discretion." *Robinson v. Pacific R.R. Co.*, 16 F.3d 1083, 1086 (10 Cir. 1994). Abuse of discretion is defined as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994) (quoting *United States v. Cardenas*, 864 F.2d 1528, 1530 (10th Cir.), *cert. denied,* 491 U.S. 909 (1989)). In reviewing a court's ruling for abuse of discretion, we give deference to the district court's evidentiary rulings. *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995).

The Oklahoma Supreme Court utilizes a substantial similarity test. *Powell*, 385 P.2d at 469. In *Powell*, the Oklahoma court determined evidence of a prior accident was admissible to prove negligence only if it contained similar conditions as the accident involved in the suit. *Id.* In evaluating the "substantial similarity" of the two accidents, several factors were considered including the direction of travel, the time of day, traffic and weather conditions, the driver's view, and any other fact showing similarity of circumstances. *Id.*

This court also employs a "substantial similarity" test for determining the admissibility of evidence involving prior accidents or complaints. The test, often used in product liability cases, is equally applicable to the introduction of evidence of train

- 5 -

related accidents under similar circumstances. ***Robinson***, 16 F.3d at 1089-90. Generally, the admission of evidence "regarding prior accidents or complaints is 'predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case.'" ***Ponder v. Warren Tool Corp.***, 834 F.2d 1553, 1560 (10th Cir. 1987) (quoting ***Rexrode v. American Laundry Press Co.***, 674 F.2d 826, 829 n.9 (10th Cir.), *cert. denied*, 459 U.S. 862 (1982)).

In ***Ponder***, we discussed the proper application of the test to evidence offered to prove negligence as well as to establish "notice" of an existing dangerous condition:

> In determining whether accidents are "substantially similar," the factors to be considered are those that relate to the particular theory underlying the case. Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar. Moreover, "[h]ow substantial the similarity must be is in part a function of the proponent's theory of proof." "If dangerousness is the issue, a high degree of similarity will be essential.... If the accident is offered to prove notice, a lack of exact similarity of conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant." When evidence of other accidents is used to prove notice or awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the one at issue should be relaxed. Once a court has determined that accidents are substantially similar, "[a]ny differences in the circumstances surrounding those occurrences go merely to the weight to be given the evidence."

834 F.2d at 1560 (citations, including those of quoted material, omitted).

Although the Langstons argue the excluded evidence was offered to prove notice, the dangerous nature of the crossing was the primary and dispositive issue before the jury. Accordingly, "if dangerousness is the issue, a high degree of similarity will be essential."

*Id.* (quoting 1 J. Weinstein & M. Berger, ***Weinstein's Evidence*** § 401[10] at 401-67).

Because the jurors were asked to determine whether the crossing was dangerous, it was reasonable for the trial court to consider the potential impact evidence of prior accidents would have on that determination--even if the evidence was clothed in the garb of "notice." The Railroad's knowledge of an allegedly hazardous condition was certainly a relevant issue, but only after the jury had determined the condition was actually hazardous.

Regardless of whether the evidence is used to establish negligence or notice, the relevant factors are always those that relate to the particular theory underlying the case. The search for similarities between the events must be defined by the defect at issue. ***Id.*** at 1560. The Langstons claimed the view of the approaching train was obscured by vegetation and the train crew failed to sound a warning whistle. Thus, the trial court properly took these factors into account when it evaluated whether the proposed evidence contained substantially similar qualities. After a hearing, the court concluded prior accidents shared no similarities with Mr. Langston's accident other than a collision at the crossing. "The fact that a collision occurred, standing alone, is insufficient to establish negligence of either of the parties involved." ***Powell***, 385 P.2d at 469.

At trial and in this court, the Langstons offered no hint of similarity between the prior accidents and the events giving rise to this case. The district court even questioned

Langstons' counsel about any similarities shared by the events, but counsel offered nothing, leaving for comparison only the fact of the collision.

In view of these circumstances, we can arrive at only one conclusion. Contrary to the Langstons' argument, rather than mechanically applying the substantial similarity test, the district court considered the Langstons' theory of the accident and the purpose for which the evidence was offered. There was no error in the court's limitation of the evidence.[2]

Next, the Langstons contend the court erred in refusing to grant a mistrial after Walt Adams, an accident investigator, testified for them. His first investigation was done at the request of the Langstons' former attorney, Mr. Ganem. He provided information about his investigations of the accident scene, which he conducted in the summer of 1988 and again in 1992. Mr. Adams described for the jury his 1988 investigation procedure, which included taking measurements, walking the track and driving repeatedly through the crossing.

---

[2]In a parting shot, the Langstons argue *Powell* is obsolete. The Oklahoma Supreme Court recently relied on *Powell* in *Roper v. Mercy Health Center*, 903 P.2d 314 (Okla. 1995), stating that under *Powell*, the trial court must "take care to see that any proof at trial of prior accidents establishes the details of those accidents, and shows that they were reasonably similar to [the plaintiff's] accident." *Id.* at 316. Therefore, although aged, like fine wine, *Powell* is very palatable.

On cross-examination, Railroad's counsel attempted to reveal a discrepancy between Mr. Adams' trial testimony and his previous deposition testimony. The deposition transcript suggested Mr. Adams' investigation was more abbreviated than his trial testimony indicated because he stated he had done a "fast work up." In an effort to impeach, defense counsel asked:

Q:      Now, as I understand it, Mr. Adams, the first time you went out to this crossing or got involved in this case in any way was in 1988. Is that correct?

A:      That's the best I can tell; yes, sir.

Q:      And were you working for someone out of Terrell Corley's office at that time?

A:       Tom was the attorney; yes, sir.

Q:      That's -- they are no longer involved in this case?

A:      That's my understanding.

Q:      Did they tell you they didn't want you to spend much money, they were concerned about economics?

At this point, the Langstons' attorney approached the bench and moved for a mistrial. The court admonished Railroad's counsel questions about a former lawyer's economic commitment to the Langstons' case were irrelevant and inadmissible; and restricted him to questions about what Mr. Adams did, how long it took him, or what he was paid. The objectionable question was left unanswered, and the court took the Motion

for Mistrial under advisement.  Contemporaneously, the court  instructed the jury to disregard the Railroad's question.  The motion was later denied.

The Langstons argue the Railroad's question was highly prejudicial and caused irreparable damage.  They claim the implication that their former attorney "thought so little of this case he did not want to spend much money on it," left a negative impression with the jury which could not be erased by a simple instruction.  They urge the question amounted to indirect testimony by former counsel that the case was not worth much.  Because this implication had a substantial prejudicial effect on their right to a fair trial, the Langstons contend a new trial should be granted.

We review the trial court's denial of motions for mistrial for abuse of discretion.  *Polson v. Davis*, 895 F.2d 705, 711 (10th Cir. 1990).  Because this court may review only the written record, great deference is given to the district judge who observed the alleged misconduct.  *Id.* at 711.

Initially, the Railroad was on permissible ground when it sought to question Mr. Adams about the discrepancies in his testimony.  Nonetheless, the Railroad's reference to Mr. Ganem's concern "about economics" was imprudent and touched on information irrelevant to the trial.   Even if the question was not clearly improper, the plausible inference drawn from it by the Langstons is.  However, taken in context of the entirety of the evidence, the district's court's immediate curative instruction, and the relative ambiguity of the unanswered question itself, we are confident the district court did not

abuse its discretion by denying a new trial. Nor did these circumstances deny substantial justice to the Langstons sufficient to justify a new trial. Fed. R. Civ. P. 61.

The Langstons contend a material factual dispute exists regarding the Gray Oaks crossing track's classification and speed rating. Prior to trial, the district court granted the Railroad's motion for partial summary judgment on the issue of track classification, concluding as a matter of law the track was a class 4 with a maximum freight train speed of 60 mph. The court found the most competent and definitive source for the appropriate classification was the Railroad Timetable, which indicated a maximum freight train speed of 60 mph. The Langstons' own expert witness, Mr. Adams, testified the Federal Railroad Administration (FRA) uses only the Railroad Timetable to determine track classification.

Indeed, 49 C.F.R. 213 governs the FRA's Track Safety Standards and prescribes minimal safety requirements. Track owners provide each section of track with a classification based on a variety of geometric and structural factors set by the FRA. Each classification is assigned a maximum allowable operating speed. Track owners are responsible for scheduled compliance inspections based on the track's classification and must keep inspection records available for review and copying by the FRA. However, the responsibility for compliance and inspection lies with the owner.

The FRA does not designate a classification for every segment of track. Rather, it lists the criteria for each class, and the owners are responsible for bringing the track into

- 11 -

compliance. The Railroad Timetable is set based on the allowable speed limit for each section of track. Thus, the Railroad Timetable becomes the standard reference resource used by the FRA for the verification of a particular track's classification.

The factual dispute claimed by the Langstons is based on deposition testimony given by Mr. J. E. Sanford, General Director of Operating Practices for the Railroad. He stated the original accident report filed with the Department of Transportation listed the track as classification 3. If the track proved to be a class 3, the speed limit would be 40 mph, and the Railroad would face allegations of negligence *per se.* In later testimony, however, Mr. Sanford stated the accident report was incorrect. He added the track was clearly a class 4 according to the timetable, and he had no idea why the report stated something else.

The trial court found the original accident report, as well as a report correcting the clerical error, was inadmissible by express statutory prohibition. Indeed, 49 U.S.C. § 20903 prohibits the use of Department of Transportation accident reports in civil actions for damages. Because the Langstons offered no other evidence the track was not a class 4, and because the dispositive source for track classification listed the track as a class 4, the court deemed the track a class 4 as a matter of law.

The Langstons now argue the court committed prejudicial error by preventing them from presenting the fact the report stated the track was class 3. We are baffled by this assertion because we fail to see any admissible evidence or offer of proof that

indicates a factual dispute exists. If we assume the Langstons consider Mr. Sanford's testimony to be their offer of proof, he stated in his deposition and in a subsequent affidavit that the track was a class 4; the original accident report was simply wrong. Further, the Railroad submitted affidavits from the Railroad Claims Representative and the Operations Manager stating the track was a class 4. No other credible evidence was submitted to refute the district court's finding that the track was class 4. Contrary to the arguments advanced here, evidence was not "improperly excluded" because no credible admissible evidence was presented by the Langstons.

Finally, the Langstons argue the court committed error by improperly instructing the jury on Oklahoma's "assured clear distance" statute, Okla. Stat. tit. 47, § 11-801 (1981). They claim the statute only applies to circumstances in which an obstruction is directly in front of the driver just prior to the accident. They suggest the instruction is "most often appropriate and typically given in rear-end collision accidents." The Langstons argue the instruction is obviously inappropriate here because "a millisecond prior to a perpendicular collision, there is no obstruction to be avoided."

This argument is patent sophistry. It is based on the premise that a train locomotive, traveling 42 miles per hour with 113 cars attached, is invisible to a driver until it is directly in front of him. Furthermore, in presenting the argument, counsel has obfuscated the full import of Okla. Stat. tit. 47, § 11-801 by quoting only subsection (a), which states:

(a)     Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.

Although the Langstons cited only this portion of the statute, they have omitted subsection (d) which amplifies the full import of the statute:

(d)     The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or *railway grade crossing . . . .*

(emphasis added).  Notwithstanding the Langstons' omissions, the statute, by its plain language, applies to drivers approaching railroad crossings.  The trial court read *both* sections (a) and (d) to the jury at the close of trial.

In determining whether the trial court erred in its instructions, we must view them in light of the entire record.  ***Blair v. Eagle-Picher Indus., Inc.***, 962 F.2d 1492, 1497 (10th Cir.), *cert. denied*, 506 U.S. 974 (1992).  The record indicates Mr. Langston left 27 feet of skid marks on the pavement approaching the crossing and remained there for several seconds before the train reached the intersection.  The train was clearly in his line of sight at some point prior to its arrival at the crossing.  Moreover, the speed of Mr. Langston's vehicle was arguably a factor to be considered by the jury.  The trial court gave an accurate reading of the governing law.

**AFFIRMED.**

- 14 -

**ENTERED FOR THE COURT**

**John C. Porfilio**
 **Circuit Judge**